**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON L. CALLIER**,<br><br>*Plaintiff*,<br>v.<br><br>**REOVATIONS UNLIMITED LLC, AN OHIO LIMITED LIABILITY COMPANY; COLUMBUS CASH BUYERS, LLC, AN OHIO LIMITED LIABILITY COMPANY; AND CHRIS HARRELL,**<br><br>***Defendants*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 3:25-CV-00108-LS** |

**REPORT AND RECOMMENDATION**

Before the Court is *pro se* Plaintiff Brandon Callier's ("Plaintiff") "Plaintiff's Motion for Default Judgment" (ECF No. 14) ("Motion"), filed on September 26, 2025. Plaintiff brought this lawsuit against Reovations Unlimited LLC ("Reovations"), Columbus Cash Buyers ("Columbus"), and Chris Harrell ("Harrell"), collectively referred to as "Defendants", for violations of the Telephone Consumer Protection Act ("TCPA"). Pl.'s Original Compl. at 70-75, ECF No. 3. Although Defendants were served with a summons and complaint, to date, *none* of the Defendants have answered Plaintiff's Complaint or otherwise appeared in this case. Plaintiff now moves the Court to enter a default judgment. On June 18, 2026, United States District Judge Leon Scyhdlower referred the motion to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Court Rule CV-72. For the reasons that follow, the Court **RECOMMENDS** Plaintiff's Motion be **GRANTED in part and DENIED in part**.

## I. BACKGROUND

### A. Factual Background

This case arises from alleged violations of the TCPA, 47 U.S.C. § 227, and regulations promulgated thereunder. Pl.'s Original Compl., ¶¶10-29, ECF No. 3. In his original complaint, Plaintiff requested "[a]n award of $1,500 per call in statutory damages arising from the TCPA 227(c) intentional violations for eight (8) phone calls[1]," *id.* at ¶D, at 13 and "[a]n award of $5,000 in statutory damages arising from intentional violations of the Texas Business and Commerce Code ("TBCC") 302.101 [for] eight (8) calls." *Id.* at ¶F, at 13. However, Plaintiff no longer seeks damages under TBCC § 302.101 because recent Texas legislative actions have clarified this statute did not apply to text messages until September 1, 2025.[2] ECF No. 14 at 2. Later, in his Motion for Default Judgment, Plaintiff asserted that he is entitled to the amount of $4,555, calculated as "$500 per 227 (c) violation for eight (8) violations plus $405 in filling fees, and $150 in service fees." *Id.*

Plaintiff asserts that he received at least eight unauthorized text messages marketing real estate broker services from Defendants over the course of May 19, 2022 to July 22, 2022. Pl.'s Original Compl. ¶¶40-79, Pg. 8 Table A. Plaintiff asserts he received these texts while being registered with the National Do-Not-Call Registry ("DNC") *Id.* ¶42. Plaintiff explains his cell phone is used for residential purposes. *Id.* ¶69.

Plaintiff alleges that between May 19 to July 18, 2022, he received a total of eight text messages from two phone numbers with agents identifying themselves by name as "with Colombus Cash Buyers." *Id.* at ¶¶37-41, Pg. 8 Table A. Plaintiff alleges that on May 19, 2022, he received the first of four text messages from a sender identifying himself as "Adam with Colombus Cash Buyers" using phone number 254-271-0737. *Id.* ¶37. On June 27, 2022, Plaintiff alleged that

---

[1] The Court notes that the Plaintiff uses "calls" interchangeably to refer to text messages and phone calls in the Original Complaint. Pl.'s Original Compl., ¶35, ECF No. 3.

[2] The Court notes that Texas has amended Tex. Bus. & Com. Code § 302.001(7) to include text messages effective September 1, 2025. TEX BUS. & COM CODE. ANN § 302.001 (West 2025). However, all communications in this case are alleged to have occurred before September 1, 2025.

he "responded to one of the text messages received on June 26, 2022, for the sole purpose of identifying the company responsible for the illegal text messages from phone number 419-452-0078." *Id.* ¶38. Plaintiff alleges that through these text messages Defendants would solicit Plaintiff home brokerage services despite Plaintiff being registered under DNC. *Id.* at ¶44.

In his Complaint, Plaintiff provides a Table listing the (1) "Number [of Messages]", (2) "Date", (3) "Time", (4) "Caller ID [Phone Number]", and (5) "Notes" of the alleged communication. *Id.* ¶41, at 8, Table A. Throughout his Complaint and Motion for Default Judgment, Plaintiff refers to texts listed on this table. He indicates that the first four texts came from "Adam" at phone number 254-271-0737. *Id.* ¶¶37-41. Plaintiff alleges that text messages 4 through 8 came from "Donovan Stilner" ("Stilner"), a Columbus "funder" at the phone number 419-452-0078. *Id.* ¶39. Adam and Stilner identified themselves as being "with Columbus Cash Buyers" in their text messages to Plaintiff. *Id; see* ECF No. 14.

**B. Procedural History**

Defendants were served with the summons and complaint on June 2, 2025. *See* ECF No. 6. Defendants had twenty-one days from service to answer. Fed. R. Civ. P. 12 (a)(1)(A)(i). Defendants did not respond, and Plaintiff moved for entry of default on June 23, 2025. ECF No. 7. However, service was defective and United States District Judge Leon Schydlower denied the motion for default and ordered Plaintiff to explain how proper service was effected for each defendant by July 1, 2025. Text Order dated June 24, 2025. Plaintiff did not meet the deadline and was then ordered to show cause by August 8, 2025. ECF No. 8. On August 7, 2025, Plaintiff returned executed summons for Defendants Columbus Cash Buyers and Reovations Unlimited. ECF No. 9. In response to the District Court's June 24, 2025, text order, Plaintiff also showed cause as to how each Defendant was properly served. ECF No. 10.

Defendants Columbus Cash Buyers and Reovations Unlimited were properly served with the summons and complaint on August 5, 2025; Defendant Christopher Harrell, on June 2, 2025. ECF Nos. 6, 9. Defendants had twenty-one days from service to answer. Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants did not timely answer.

Plaintiff filed a request for entries of default against Defendants on September 11, 2025. *See* ECF No. 12. Entry of default against Defendants was filed on September 12, 2025. *See* ECF No. 12. Plaintiff then filed the instant motion, moving for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure. *See* ECF No. 14. Defendants have not responded to the motion for default judgment or otherwise appeared in this matter.

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entry of default and default judgment. In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief. *See RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 823-26 (W.D. Tex. 2020); *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

Regarding the procedural propriety of the default, a defendant defaults if he or she fails to timely respond to the complaint. Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the plaintiff may seek default judgment under Rule 55(b), though default judgment is a "drastic remedy" reserved for appropriate cases. *Guadian v. United Tax Def. LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024) (citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).

In deciding whether default judgment is procedurally proper, the court considers the following six factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("*Lindsey* factors").

As to the substantive merits of the default judgment the court accepts the plaintiff's well-pleaded allegations as true, except regarding damages. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment. *Nishimatsu*, 515 F.2d at 1206. "In addition to the complaint, the court may consider evidence that 'simply add[s] factual details [and thereby] fleshe[s] out [the plaintiff's] claim' or 'serve[s] as further proof' of the plaintiff's allegations." *Hartford Life & Accident Ins. Co. v. Cuellar*, EP-17-CV-00096-DCG, 2018 WL 11346753, at *1 (W.D. Tex. July 25, 2018) (citing *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015)).

In other words, "a defendant's default does not in itself warrant the court in entering a default judgment …. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2 at 1206. Courts apply the standard set in Federal Rule of Civil Procedure 8 for the sufficient basis inquiry.[3] Courts in the Fifth Circuit have distinguished

[3] Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual

between the Rule 8 standard arising in the context of a Rule 12(b)(6) motion and a default-judgment context. *Wooten*, 788 F.3d at 498; *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). A hearing on damages is required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Whether default judgment is granted is discretionary with the court. "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, the district court "has the discretion to decline to enter a default judgment." *Lindsey*, 161 F.3d at 893.

The Court must establish that jurisdiction is proper. Before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

---

allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. Court's Jurisdiction

#### 1. *Subject Matter Jurisdiction*

As an initial matter, the Court considers whether it has subject-matter jurisdiction and personal jurisdiction over the defendant. *Guadian*, 2024 WL 140249, at *2–3 (citing *Drew v. Lexington Consumer Advoc.*, No. 16-cv-00200-LB, 2016 WL 9185292, at *2 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advoc., LLC*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016)). The Court has subject-matter jurisdiction over Plaintiff's TCPA claims because the TCPA is a federal statute. *See* 28 U.S.C. § 1331.

#### 2. *General Personal Jurisdiction*

There are two forms of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction for a corporation exists within a state where a corporation "is fairly regarded as at home." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Generally, a corporation is "at home" only in its place of incorporation or principal place of business." *Frank v. P.N.K. (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020). Because all Defendants are alleged to be incorporated, or otherwise domiciled in Ohio, the Court lacks general personal jurisdiction. *See* Pl.'s Original Compl. at ¶¶2-4.

#### 3. *Specific Personal Jurisdiction*

Specific jurisdiction exists where the suit arises out of the defendant's contacts with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262. "[A] federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019) (internal

quotes and citation omitted). Minimum contacts with the forum are sufficient for personal jurisdiction when the contacts would reasonably render litigation in that forum foreseeable. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (describing the "critical" foreseeability at issue as whether the defendant "should reasonably anticipate being haled into court" in that forum). Because the Texas long-arm statute extends to the limits of federal due process, the Court considers whether Defendant purposefully availed itself of Texas and whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *Id.* "[T]he Fifth Circuit has repeatedly held that intentionally directing misrepresentations over the phone to recipients in the forum gives rise to sufficient minimum contacts for specific personal jurisdiction." *Federal Trade Comm'n v. Educare Centre Services, Inc.*, 414 F. Supp.3d 960, 970 (W.D. Tex. 2019) (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018)).

In the instant case, exercising personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice. In assessing whether the exercise of personal jurisdiction is reasonable, the Fifth Circuit considers five factors:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Guadian*, 2024 WL 140249, at *4 (quoting *Rogers v. Health Ctr. of Lake City, Inc.*, 636 F. Supp. 3d 758, 771 (W.D. Tex. 2022)). The *Rogers* court, applying these factors, concluded that "its exercise of personal jurisdiction over a TCPA defendant was reasonable because 'Texas has an interest in litigation enforcing its telephone consumer protection laws, and [the] [p]laintiff would be inconvenienced if required to litigate his claims in [the defendant's] preferred state." *Id.* (quoting *Rogers*, 636 F. Supp. 3d at 771). The court further observed that enforcement of such

laws "could be frustrated if plaintiffs as a group were forced to travel to the defendants' preferred state." *Id.* (quoting *Rogers*, 636 F. Supp. 3d at 771). The same considerations apply here, and Defendant has not demonstrated that the exercise of personal jurisdiction would be unreasonable.

Here, specific jurisdiction arises out of Defendant's intentional contacts with this forum. Plaintiff alleges that Defendants intentionally directed text message solicitations into Texas. Pl.'s Original Compl. ¶8.a-c. ("Defendants target Texas when marketing real estate broker services and regularly conduct business in this District, including telephone solicitation."). Plaintiff alleges that "[d]efendants sent phone calls to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendants." *Id.* ¶8.c. Further, he alleges that "[d]efendants purposefully spoofed phone calls utilizing a "254" Texas area code phone numbers to make it appear as if they were doing business form Texas." *Id.* ¶8.a.

In any event, as to Adam and Stilner who appear in Plaintiff's Original Complaint, Plaintiff has failed to allege or offer evidence that describes Defendant's day-to-day control over the actions of an agency relationship. Courts have declined to find an agency relationship based on "the mere fact that telemarketing calls were made on behalf of" a party challenging jurisdiction. *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) (holding that plaintiff failed to meet "his pleading burden to establish personal jurisdiction" because it failed to allege "the nature of the relationship [between the] entities [and the] unidentified telemarketing firm" or offer evidence that defendant "had the authority to assign tasks and control the means and details of the" telemarketer's work); *see also Cano v. Assured Auto Grp.*, No. 3:20-CV-350-G, 2021 WL 3036933, at *10 (N.D. Tex. July 19, 2021) (holding that to show an agency relationship a defendant must make more than generic allegations to support imputing a third party's calls). The Plaintiff makes no such showing here. Therefore, Plaintiff has

not plead a *prima facie* case that such an agency relationship exists to support personal jurisdiction over the actions of Adam or Stilner.

**B. Service of Process and Venue**

Under the Federal Rules of Civil Procedure, Defendants were properly served with process on June 2, 2025 and August 5, 2025, and therefore had the opportunity to respond but did not. ECF Nos. 6, 9. Under Federal Rule of Civil Procedure 4(e), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Ohio law allows service "by leaving a copy of the process and the complaint, or other document to be served, at the usual place of residence of the person to be served with some person of suitable age and discretion then residing therein." Ohio R. Civ. P. 4(C)(2)(a). Plaintiff's process server served Defendant Christopher Harrell, by delivering a copy of the Complaint and summons to Maria Harell, wife of Defendant Christopher Harrell, who lives in the same household as Christopher Harrell at 2165 Berryhill Dr., Grove City, OH, 43123, and is an adult of suitable age. ECF Nos. 6, 10.

Under Fed. R. Civ. P. 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Plaintiff's process server served Defendants Columbus Cash Buyers and Reovations Unlimited the Complaint, summons, and other initiating papers via their registered agent at 6275 Commonwealth Dr., Westerville, OH. ECF No. 9. Thus, Plaintiff effected service under Rules 4(e) and 4(h)(1)(B). Defendants had the opportunity to respond but did not.

**C. Procedural Propriety**

Next, the Court turns to the three-part test to determine whether a default judgment should be entered against Defendants. The first step is to review whether the entry of default judgment is procedurally warranted considering the six *Lindsey* factors. *See Lindsey*, 161 F.3d 886, 893 (5th Cir. 1998). A review of the pleadings before the court shows that default judgment against Defendants are procedurally appropriate. Regarding the first *Lindsey* factor, because Defendants defaulted and filed no responsive pleadings, there are no genuine issues of fact at issue here. *Guadian*, 2024 WL 140249, at *2-3 (citing *Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018). Second, Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Defendants' failure to timely respond, which threatens to bring the entire process to a halt. *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) ("failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff[s'] interests."). Third, the grounds for default are "clearly established" because Defendants have not responded to the summons, the entry of default, or the motion for default judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment appropriate "if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by [the parties'] failure to respond either to the summons and complaint, the entry of default, or the motion for a default judgment.'"). Fourth, there is no evidence that Defendants' default was caused by a good faith mistake or excusable neglect, this is not a situation where Defendants have interposed any possible explanation for their inaction for this court to consider. Fifth, default judgment against Defendants would not be unduly harsh, given that Defendants have been given notice and opportunity to respond to this action. Finally, the Court is not aware of any basis on which a court would think

itself obligated to set aside Defendants' default. Therefore, because all the *Lindsey* factors are satisfied, the Court finds default judgment against all Defendants are procedurally appropriate.

**D. Substantive Merits**

The second step in the three-part test to determine whether a default judgment should be entered is whether there is a sufficient basis in the pleadings for the judgment. Due to the entry of default, Defendants are deemed to have admitted the allegations outlined in the Complaint. *See Nishimatsu*, 505 F.2d at 1206 (explaining that "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact. . . ."). Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Plaintiff's claim for relief. *See id.*

**1. *TCPA Do Not Call Claim***

Section 227(c)(2) of the TCPA grants the Federal Communications Commission ("FCC") rulemaking authority to "protect residential telephone subscriber's privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This subsection creates a private right of action to "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" promulgated by the FCC under the subsection. *Id.* § 227(c)(5).

The FCC Regulation that Plaintiff relies on, 47 C.F.R. § 64.1200(c)(2), prohibits unsolicited calls to "residential telephone subscribers" who have registered on the "do-not-call registry" that the FCC maintains. This regulation applies to "telephone solicitations or telemarketing calls or text messages" made to wireless telephone numbers. 47 C.F.R. § 64.1200(e). Together, Section 227(c)(2) of the TCPA and FCC regulation 47 C.F.R. § 64.1200(c)(2) require Plaintiff to allege that he is a "residential telephone subscriber" registered on the do-not-call registry and that Defendants made more than two unsolicited calls or texts within a twelve-month period.

Here, Plaintiff sufficiently pleads facts under Rule 8 to support entering a default judgment on his TCPA Do-Not-Call claim. He alleges that Defendants called or texted him eight times to solicit real estate brokerage services despite Plaintiff having registered his phone number on the National Do-Not-Call Registry since 2007. Pl.'s Original Compl. at ¶30 Plaintiff also asserts his cell phone is used for residential purposes. *Id.* at ¶69. Plaintiff asserts he uses his personal cell phone "for personal, family, and household use. [He] maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family." *Id.*

Courts in the Fifth Circuit have recognized that a plaintiff adequately states a claim under § 227(c)(5) by alleging repeated calls made without compliant do-not-call procedures or to a number listed on the national registry, and that a defendant's default admits such regulatory violations. *See Callier*, 2021 WL 2742766, at 4–5.

Although courts have differed on whether a cellular telephone qualifies as a "residential telephone" under § 64.1200(c), there is no binding precedent foreclosing such claims, and courts have held that a cellular number may qualify where the plaintiff alleges it is used for residential purposes. *See Guadian*, 2024 WL 140249, at *2–3; *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *2–3 (E.D. Tex. June 26, 2023), *report and recommendation adopted*, 2023 WL 4488848 (E.D. Tex. July 12, 2023). Consistent with FCC guidance extending TCPA protections to cellular phones, courts within this Circuit have concluded that such allegations are sufficient to state a claim under § 227(c)(5). *See Guadian*, 2024 WL 140249, at 3 (citing *In re Rules & Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14039 (2003)).

Similarly, recent TCPA jurisprudence reflects a growing split among district courts regarding whether text messages constitute "telephone calls" subject to the statute's Do-Not-Call

provisions under 47 U.S.C. § 227(c). In *Jones v. Blackstone Medical Services, LLC*, the Central District of Illinois dismissed a TCPA class action, holding that § 227(c)'s plain text, which was enacted before the advent of text messaging, does not encompass text messages, notwithstanding prior FCC guidance to the contrary. No. 1:24-cv-01074, 2025 WL 2042764, at *3–5 (C.D. Ill. July 21, 2025). That court relied heavily on the Supreme Court's recent decisions in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), and *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), which rejected Chevron deference and clarified that district courts are not bound by agency interpretations but must instead apply ordinary tools of statutory construction.

By contrast, other courts continue to hold that § 227(c) applies to text messages. *See Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). Further, interpreting § 227(c) to include text messages is consistent with guidance from the Federal Communications Commission ("FCC"). *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *3 (N.D. Ill. Nov. 10, 2025) (citing *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). "The FCC has stated that § 227(b) 'encompass[es] both voice calls and text calls.'" *Sagar v. Kelly Auto. Group, Inc.*, 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14115 (2003)). Likewise, the FCC has stated that § 227(c) includes text messages. See *In the Matter of Emanuel "Manny" Hernandez*, 2018 WL 6830220, at *1 (F.C.C. Dec. 21, 2018) (finding that Hernandez violated § 227(c) because it is "illegal for persons or entities, including advertisers and marketers, to make

marketing calls to telephone numbers listed on the [do-not-call registry]. This prohibition includes both voice calls and text messages."). *Id.*

Moreover, interpreting § 227(c) to include text messages is consistent with numerous district court decisions. *See, e.g.*, *Sagar v. Kelly Auto Group, Inc.*, 2021 WL 5567408 (N.D. Ill. Nov. 29, 2021); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203 (D. Colo. 2022); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *3 (N.D. Ill. Nov. 10, 2025); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-CV-486, 2024 WL 4190513, at *6–8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024). Appellate authority likewise supports this interpretation. *Hudson v. Palm Beach Tan, Inc.*. The Ninth Circuit has held that a phone owner or subscriber whose number is listed on the National Do-Not-Call Registry and who receives unsolicited telemarketing text messages has standing under § 227(c). *Id.*; *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *see also Chennette v. Orkin, LLC*, 50 F.4th 1225, 1229 (9th Cir. 2023) (recognizing § 227(c) claims based on telemarketing texts sent to "residential" cell phone numbers). Other courts have similarly concluded that the receipt of unsolicited telemarketing text messages constitutes a cognizable injury under the TCPA. *Hudson v. Palm Beach Tan, Inc.,* No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *6–8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024); *Williams v. Myler Disability, LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 WL 6693134, at *6 (W.D.N.C. Nov. 12, 2020).

Ultimately, the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)(5).

**E. Entitlement to Damages**

Plaintiff seeks relief against Defendants under the TCPA, 47 U.S.C. § 227, and regulations promulgated thereunder. In determining the amount of damages to be awarded, the Court may rely on declarations and documentary evidence if the amount claimed is capable of mathematical calculation. *See* Fed. R. Civ. P. 55(b)(2)(B). The amount of damages available to Plaintiff is capable of mathematical calculation, and Plaintiff has provided these calculations in his original complaint and Motion for Default Judgment.

In his original complaint, Plaintiff requested "[a]n award of $1,500 per call in statutory damages arising from the TCPA 227(c) intentional violations for eight (8) phone calls." *Id.* ¶D, at 13. Later, in his Motion for Default Judgment, Plaintiff asserted that he is entitled to "$4,555.00, calculated as follows: $500 per 227 (c) violations for eight (8) violations plus $405 in filing fees, and $150 in service fees." ECF No. 14 at 11.

First, the TCPA authorizes a private right of action under 47 U.S.C. § 227(c)(5) for a person who receives more than one telephone call within a twelve-month period by or on behalf of the same entity in violation of the Commission's Do-Not-Call regulations. 47 U.S.C. § 227(c)(5). A prevailing plaintiff may recover actual damages or statutory damages of $500 for each violation, with treble damages available for willful or knowing violations. 47 U.S.C. § 227(c)(5)(B). Courts have recognized that repeated unlawful calls may give rise to multiple statutory awards under § 227(c). *See Guadian*, 2024 WL 140249, at *6–7. Here, the Court **RECOMMENDS** awarding $4,000.00 for eight text messages under 47 U.S.C. § 227(c).

Second, Plaintiff seeks a total of $405 in filing fees and $150 in service fees. ECF No. 14 at 11. Plaintiff argues he is entitled to recover his costs incurred in serving Defendants under Rule 4(d)(2) of the Federal Rules of Civil Procedure and cites to a district court case from the United States Court for the District of New Jersey where the court awarded fees and costs to a plaintiff

pursuant to Rule 4 of the Federal Rules of Civil Procedure. ECF No. 14 at 10 (citing *Mercedes-Benz Fin. Servs. USA LLC v. Chandler*, No. 19-cv-15716, 2020 WL 3892360, at *2 (D.N.J. July 2, 2020)). Rule 4 however, only allows the recovery of service costs when "a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States." Fed. R. Civ. P. 4 (d)(2). Here, Plaintiff does not claim to have attempted to secure a waiver from any Defendant in his Motion, nor has he filed any other evidence to suggest this. Accordingly, the Court **RECOMMENDS** that Plaintiff cannot recover service costs under Rule 4.

Under Fifth Circuit precedent, Plaintiff can only recover for the costs of the private process server fees if he falls under the "extraordinary circumstances." *See Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) ("[T]his court held that absent exceptional circumstances, the costs of a private process server are not recoverable . . ."); *Cypress-Fairbanks Indep. Sch. Dist. v. Barry F. ex rel. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997) ("As there was nothing exceptional about the parties or the nature of this case, the district court should have denied these unnecessary private service costs."). Here, nothing suggests extraordinary circumstances and therefore this Court **RECOMMENDS** that Plaintiff cannot recover for service fees.

Plaintiff can recover for filing fees under 28 U.S.C. § 1920, and the Court takes judicial notice of the $405.00 filing fee paid by Plaintiff. ECF No. 2. Therefore, the Court **RECOMMENDS** that Plaintiff be awarded $405.00 in costs.

## IV. CONCLUSION AND RECOMMENDATION

For all these reasons, the Court hereby recommends that Plaintiff's Motion for Default Judgment (ECF No. 14) be **GRANTED in Part, and DENIED in part**. Further, the Court **RECOMMENDS** damages be awarded in the amount of $4,405.00

So **RECOMMENDED** and **SIGNED** this 12th day of August 2026.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**